685 So.2d 1234 (1996)
Memwaldy CURTIS, Appellant,
v.
STATE of Florida, Appellee.
No. 84293.
Supreme Court of Florida.
October 10, 1996.
Rehearing Denied January 8, 1997.
*1235 Nancy A. Daniels, Public Defender and Chet Kaufman, Assistant Public Defender, Tallahassee, for Appellant.
Robert A. Butterworth, Attorney General and Gypsy Bailey, Assistant Attorney General, Tallahassee, for Appellee.
SHAW, Justice.
We have on appeal the judgment and sentence of the trial court imposing the death penalty on Memwaldy Curtis. We have jurisdiction. Art. V, § 3(b)(1), Fla. Const. We affirm the conviction but reverse the death sentence and remand for imposition of a life sentence without possibility of parole for twenty-five years.
The Safeco Food Store in Duval County, Florida, was anything but safe for its two clerks, Fouad Taaziah and Najwan Khair-Bek, when Memwaldy Curtis and Anthony Howard entered the store and demanded money at 11:30 p.m., December 21, 1992. Howard summarily shot Taaziah and, after Khair-Bek handed Curtis the money from the cash register, shot Khair-Bek. When Khair-Bek fell to the floor, Curtis shot him in the foot. Taaziah lived; Khair-Bek died.
Curtis and Howard were arrested and charged with first-degree murder, attempted first-degree murder, and robbery. Each gave a statement implicating himself and the other. Howard pled guilty to first-degree murder and was given a life sentence. During the guilt phase of Curtis's trial, evidence was introduced showing that Howard admitted firing the bullet that killed Khair-Bek. Curtis testified on his own behalf and was convicted as charged.
During the penalty phase, Curtis's girlfriend, mother, and father testified in mitigation. Defense counsel argued that Curtis was only seventeen years old at the time of the crime, that he did not fire the fatal bullet, and that the killer (Howard) got a life sentence. The court followed the jury's nine-to-three recommendation and sentenced Curtis to death based on two aggravating circumstances,[1] one statutory mitigating circumstance,[2] and four nonstatutory mitigating circumstances.[3] The court imposed consecutive life sentences on the attempted murder and robbery charges. Curtis raises fifteen issues and numerous subissues on appeal.[4]
Curtis first claims that the court erred in granting a prompt trial. The State on April 26, 1994, told the court that Curtis had waived his right to a speedy trial and the State was requesting a June 6 trial date. Defense counsel told the court that he had discussed the matter with Curtis and that Curtis had insisted on an early date even though counsel would be ill-prepared. After the court inquired of Curtis at length and Curtis remained resolute in his desire for a prompt trial, the court denied defense counsel's motion for a continuance.
At the pretrial conference June 3, defense counsel again moved for a continuance and the prosecutor opposed the motion, saying *1236 that it was his understanding that Curtis wanted to have his day in court and be over with it. The court inquired of Curtis and Curtis remained firm. The court denied the motion. Finally, on June 6 defense counsel renewed his motion for a continuance and after the court inquired of Curtis and he again was resolute the court denied the motion.
Curtis now claims that the court erred in acceding to his demands and denying his lawyer's bid for a continuance. We disagree. The granting or denying of a continuance is within the sound discretion of the trial court and this Court will not set aside such a ruling absent an abuse of discretion, even in a capital case. Williams v. State, 438 So.2d 781 (Fla.1983). In the present case, the trial court discussed the matter extensively with Curtis on numerous occasions and disclosed in detail the consequences of a prompt trial. Curtis was adamant. Curtis's decision was informed and knowing and was properly within his purview. See generally 2 Wayne R. LaFave & Jerold H. Israel, Criminal Procedure § 11.6 (1984). We find no error.
Curtis next claims that the trial court erred in denying his peremptory challenge of a prospective juror. Curtis, who is black, peremptorily struck four whites, and when the State objected on discrimination grounds, defense counsel gave acceptable reasons for the strikes.[5] The following then transpired when defense counsel sought to back-strike a fifth white venireperson, Mr. Kelley, and the State objected:
(The defense attorneys consulting with defendant Curtis off the record.)
MR. ELER: Judge, we are going to strike Mr. Kelley.
MR. MALTZ: I would object to that because Mr. Kelley didn't answer anything. He answered the questions real plain. There is absolutely no race/gender neutral reason to strike this individual.
THE COURT: You say a Neil challenge?
MR. MALTZ: That is a Neil/Slappy challenge.
THE COURT: Give me what your reasons for challenging him.
MR. ELER: Judge, my client indicated during the course of the jury selection he did not feel as though [Mr. Kelley] would adequately represent a fair cross-section of the community in this particular case and requested that I strike Mr. Kelley for a peremptory.
MR. MALTZ: That is not a race-neutral reason.
THE COURT: That is not a race-neutral reason; feelings don't count.
I will deny the challenge, the peremptory challenge, for Mr. Kelley. Based on the Neil and Slappy cases.
Curtis claims that the trial court erred in denying the strike in several ways. First, he asserts that the court should not have conducted an inquiry because the State had made no prima facie showing of discrimination. Second, Curtis alleges that the reason given by defense counsel, i.e., Kelley did not represent a fair cross-section of the community, is race-neutral. We disagree on this record.
This Court recently updated Florida law governing racially motivated peremptory challenges in Melbourne v. State, 679 So.2d 759 (Fla.1996), setting forth the following guidelines:
A party objecting to the other side's use of a peremptory challenge on racial grounds must: a) make a timely objection on that basis, b) show that the venireperson is a member of a distinct racial group, and c) request that the court ask the striking party its reason for the strike. If these initial requirements are met (step 1), the court must ask the proponent of the strike to explain the reason for the strike.
At this point, the burden of production shifts to the proponent of the strike to come forward with a race-neutral explanation (step 2). If the explanation is facially race-neutral and the court believes that, *1237 given all the circumstances surrounding the strike, the explanation is not a pretext, the strike will be sustained (step 3). The court's focus in step 3 is not on the reasonableness of the explanation but rather its genuineness. Throughout this process, the burden of persuasion never leaves the opponent of the strike to prove purposeful racial discrimination.
Id. at 764 (footnotes omitted).
We noted that reviewing courts should enforce the above guidelines in a non-rigid manner, giving due weight to the trial court's ruling:
Voir dire proceedings are extraordinarily rich in diversity and no rigid set of rules will work in every case. Accordingly, reviewing courts should keep in mind [the following principle] when enforcing the above guidelines[:].... [T]he trial court's decision turns primarily on an assessment of credibility and will be affirmed on appeal unless clearly erroneous.
Id. at 764-65 (footnotes omitted).
The issue presented in this case is whether the above guidelines apply when a peremptory challenge is exercised against a white venireperson. This question, we conclude, has already been answered in Melbourne: "These guidelines encapsulate existing law and are to be used whenever a race-based objection to a peremptory challenge is made. The goal of these guidelines is the elimination of racial discrimination in the exercise of peremptory challenges." Id. at 764. In short, the guidelines apply across the board to each "venireperson [who] is a member of a distinct racial group." Id. at 764. The right to an impartial jury guaranteed by article I, section 16, Florida Constitution, and the right to equal protection guaranteed by article I, section 2, Florida Constitution, do not discriminate among racial groups.
Applying Melbourne to the present case, we note that while the "cross-section" explanation offered by Curtis can embrace permissible factors such as economic status, it can also encompass impermissible factors such as race and has in fact been used throughout Florida criminal jurisprudence in connection with race-based claims. See, e.g., Spencer v. State, 545 So.2d 1352 (Fla.1989); Brown v. State, 526 So.2d 903 (Fla.1988). In light of this and after reviewing the full record in this case, we cannot say that the trial court "clearly erred" in denying the strike against Mr. Kelley. The court did not rule reflexivelyit had considered and overruled prior State objections to strikes against white venirepersons. We find no error.
Curtis next claims that his conviction for attempted first-degree murder must be vacated because the crime of attempted first-degree felony murder was abrogated in State v. Gray, 654 So.2d 552 (Fla.1995). We disagree. Curtis was convicted of "attempted first-degree murder as charged in the indictment." The indictment read, "Curtis ... did attempt to unlawfully kill Fouad Taaziah, a human being, by shooting the said Fouad Taaziah, with a pistol, with a premeditated design to effect the death of Fouad Taaziah." (Emphasis added.) Gray applies only to attempted first-degree felony murder. We find no error.
As his last point, Curtis claims that his death sentence is disproportionate. We agree. The two aggravating circumstances are posed against substantial mitigation. Curtis was seventeen years old at the time of the crime, did not kill the victim (Curtis's bullet struck the victim in the foot), was remorseful, had been helpful to schoolmates and inmates, and had adjusted well to prison life, and the actual killer was sentenced to life. Under these facts, death is disproportionate. See generally Morgan v. State, 639 So.2d 6 (Fla.1994) (death disproportionate where aggravating circumstances were considered against substantial mitigation); Livingston v. State, 565 So.2d 1288 (Fla.1988) (same); Slater v. State, 316 So.2d 539 (Fla. 1975) (death disproportionate where triggerman pled guilty and was sentenced to life). We find the remainder of Curtis's claims to be without merit.
Based on the foregoing, we affirm the convictions and sentences except for the death sentence, which we vacate. We remand for imposition of a life sentence with no possibility of parole for twenty-five years on the first-degree murder count.
It is so ordered.
*1238 KOGAN, C.J., and OVERTON, GRIMES, HARDING and ANSTEAD, JJ., concur.
WELLS, J., concurs as to the convictions and concurs in result only as to the sentence.
NOTES
[1] The court found that the murder was committed in the course of a robbery and for pecuniary gain and that Curtis had been convicted of a prior violent felony.
[2] The court found Curtis's age at the time of the crime (he was seventeen) as a mitigating circumstance.
[3] The court found the following: Curtis was remorseful; he helped a schoolmate in a fight several years ago; he helped an inmate make a phone call; and he had adjusted well to prison life.
[4] Curtis claims error on the following points: 1) denial of Curtis's motion for continuance; 2) denial of Curtis's peremptory challenge; 3) attempted first-degree felony murder is not a crime; 4) admission of Fountain's prior consistent statement; 5) refusing to let Curtis comment on the State's failure to produce Howard at trial; 6) prosecutorial misconduct; 7) premeditation; 8) admission of Curtis's drug dealing; 9) refusing to interview the jury concerning Curtis's claim that a juror discussed the case; 10) use of Curtis's pending robbery charge as impeachment; 11) use of the presentence investigation report; 12) refusing to let the jury see details of Howard's plea; 13) aggravating circumstances; 14) mitigating circumstances; 15) proportionality.
[5] Defense counsel gave acceptable reasons for three of the strikes. None of the parties proceeded on the fourth.