804 So.2d 1185 (2001)
Leonardo FRANQUI, Appellant,
v.
STATE of Florida, Appellee.
No. SC94269.
Supreme Court of Florida.
October 18, 2001.
Rehearing Denied January 8, 2002.
*1188 John H. Lipinski, Special Assistant Public Defender, Miami, FL, for Appellant.
*1189 Robert A. Butterworth, Attorney General, and Sandra S. Jaggard, Assistant Attorney General, Miami, FL, for Appellee.
PER CURIAM.
We have on appeal an order of the trial court imposing the death penalty upon Leonardo Franqui following resentencing. We have jurisdiction. See art. V, § 3(b)(1), Fla. Const. For the reasons set forth below, we affirm Franqui's death sentence.

BACKGROUND
On February 14, 1992, Franqui was charged with committing first-degree murder of a law enforcement officer; armed robbery; aggravated assault; two counts of grand theft; and two counts of burglary in connection with a bank robbery. Franqui was tried jointly with codefendants Ricardo Gonzalez and Pablo San Martin. This Court previously summarized the facts in this case as follows:
The defendant, Leonardo Franqui, along with codefendants Pablo San Martin, Ricardo Gonzalez, Fernando Fernandez, and Pablo Abreu were charged with first-degree murder of a law enforcement officer, armed robbery with a firearm, aggravated assault, unlawful possession of a firearm while engaged in a criminal offense, grand theft third degree, and burglary [Note 1]. Franqui, Gonzalez, and San Martin were tried together before a jury in May, 1994.
[Note 1] One count of aggravated assault and the unlawful possession of a firearm while engaged in a criminal offense were nol prossed by the State after its opening statement.
The record reflects that the Kislak National Bank in North Miami, Florida, was robbed by four gunmen on January 3, 1992. The perpetrators made their getaway in two stolen grey Chevrolet Caprice cars after taking a cash box from one of the drive-in tellers. During the robbery, Police Officer Steven Bauer was shot and killed. Shortly after the robbery, the vehicles were found abandoned two blocks west of the bank.
Approximately two weeks later, codefendant Gonzalez was stopped by police after leaving his residence on January 18, 1992. He subsequently made unrecorded and recorded confessions in which he told police that Franqui had planned the robbery, involved the other participants and himself in the scheme, and chosen the location and date for the crime. He said that Franqui had procured the two stolen Chevys, driven one of the cars, and supplied him with the gun he used during the robbery. He further stated that Franqui was the first shooter and shot at the victim three or four times, while he had shot only once. Gonzalez indicated that he shot low and believed he had only wounded the victim in the leg. Gonzalez consented to a search of his apartment which revealed $1200 of the stolen money in his bedroom closet. He was subsequently reinterviewed by police and, among other things, described how Franqui had shouted at the victim not to move before shooting him [Note 2].
[Note 2] San Martin also made a confession to police, in which he stated that the robbery was planned by a black friend of the codefendant Fernandez and that the planning occurred at Fernandez's apartment. San Martin admitted that he had grabbed the money tray during the robbery but could not say who carried guns or did the shooting.
Franqui was also questioned by police on January 18, 1992, in a series of unrecorded and recorded sessions. During his preinterview, Franqui initially denied *1190 any involvement in the Kislak Bank robbery, but when confronted with the fact that his accomplices were in custody and had implicated him, he ultimately confessed. Franqui stated that Fernandez had hatched the idea for the robbery after talking to a black male, and he had accompanied the two men to the bank a week before the robbery actually took place. He maintained that the black male friend of Fernandez had suggested the use of the two stolen cars but denied any involvement in the thefts of the vehicles. According to Franqui, San Martin, Fernandez and Abreu had stolen the vehicles. Franqui did admit to police that he and Gonzalez were armed during the episode, but stated that it was Gonzalezand not himselfwho yelled at the victim to "freeze" when they saw him pulling out his gun. Franqui denied firing the first shot and maintained that he fired only one shot later.
At trial, over the objection of Franqui, the confessions of codefendants San Martin and Gonzalez were introduced without deletion of their references to Franqui, upon the trial court's finding that their confessions "interlocked" with Franqui's own confession. In addition, an eyewitness identified Franqui as the driver of one of the Chevrolets leaving the bank after the robbery, and his fingerprints were found on the outside of one of the vehicles. Ballistics evidence demonstrated that codefendant Ricardo Gonzalez had fired the fatal shot from his .38 revolver, hitting the victim in the neck, and that Franqui had shot the victim in the leg with his .9 mm handgun.
Franqui v. State, 699 So.2d 1332, 1333-34 (Fla.1997). Franqui was convicted on all counts and the jury recommended death by a vote of nine to three. See id. at 1334. The trial court followed the jury's recommendation and sentenced Franqui to death. See id.
On appeal, we affirmed Franqui's convictions but vacated his sentence on the basis that the trial court erred in admitting the confession of codefendant Gonzalez against Franqui in their joint trial. See id. at 1335-36. Although we found the admission of Gonzalez's confession was harmless beyond a reasonable doubt with respect to guilt, we concluded that the confession could have prejudiced Franqui during the penalty phase. See id. at 1336. Accordingly, we vacated Franqui's death sentence and remanded the case for a new penalty phase proceeding. See id.
During the week of August 24-31, 1998, a jury was empaneled and a new penalty phase was held. At the resentencing, the State presented several witnesses, including the two bank tellers who were with Officer Bauer the morning of his murder; law enforcement officers who arrived at the scene following the shooting to gather evidence and render emergency assistance to the victim; detectives who questioned and obtained a sworn statement from Franqui describing his role in the robbery leading to Officer Bauer's death; and a medical examiner regarding the cause of death and injuries.
Franqui presented the testimony of several witnesses to substantiate his claims for mitigation. Specifically, Franqui's uncle testified with respect to his family history and background. Franqui's cousin testified regarding his self-improvement and faith since being incarcerated. In addition, Franqui's father-in-law and sisterin-law testified that he was a good husband as well as a loving and caring father to his two children.[1]
The jury recommended the death penalty by a vote of ten to two. The trial court *1191 followed the jury's recommendation and sentenced Franqui to death. In so doing, the trial court found three aggravating circumstances,[2] no statutory mitigating circumstances,[3] and four nonstatutory mitigating circumstances.[4] The trial court concluded that the aggravating circumstances outweighed the mitigating circumstances and sentenced Franqui to death.
This appeal follows, in which Franqui raises the following six issues: (1) the trial court erred in excusing two potential jurors for cause; (2) the trial court erred in instructing and permitting the jury to be instructed by the State that it was required to recommend a death sentence if the aggravating circumstances outweighed the mitigating circumstances; (3) the trial court erred in overruling defense objections to prosecutorial closing argument; (4) the trial court erred in refusing to instruct the jury that it could consider the life sentences given to codefendants San Martin and Abreu as a mitigating factor; (5) the trial court failed to find and weigh all mitigating circumstances; and (6) the death penalty is disproportionate in this case.

ANALYSIS
First, Franqui asserts that the trial court improperly excused jurors Pereira and Lopez for cause over defense counsel's objections. Franqui claims that both jurors indicated their ability to follow the law and the court's instructions and, therefore, should not have been excused. The test for determining juror competency is "whether the juror can lay aside any bias or prejudice and render a verdict solely on the evidence presented and the instructions on the law given by the court." Kearse v. State, 770 So.2d 1119, 1128 (Fla. 2000) (citing Lusk v. State, 446 So.2d 1038, 1041 (Fla.1984)). Under this test, a trial court should excuse a juror for cause if any reasonable doubt exists as to whether the juror possesses an impartial state of mind. See id.; see also Singer v. State, 109 So.2d 7, 23-24 (Fla.1959) ("[I]f there is basis for any reasonable doubt as to any juror's possessing that state of mind which will enable him to render an impartial verdict based solely on the evidence submitted and the law announced at the trial he should be excused for cause on motion of a party, or by the court on its own motion."). The trial court has the duty to decide if a challenge for cause is proper, and its ruling will be sustained on appeal absent an abuse of discretion. See Castro v. State, 644 So.2d 987, 989-90 (Fla.1994); see also Singleton v. State, 783 So.2d 970, 973 (Fla. 2001).
*1192 During voir dire, juror Pereira initially expressed doubts about her support of the death penalty but thought it was necessary given the current state of affairs. When asked by the court if she could recommend death if the aggravating circumstances outweighed the mitigating circumstances, Pereira responded, "I think yes." Upon further questioning by the court, Pereira clarified her previous response by stating that she would recommend death if she really believed that it was necessary. Pereira, however, subsequently indicated that she agreed with another veniremember who responded that she would never impose the death sentence. Based upon her vacillation throughout voir dire, we find that the trial court did not abuse its discretion in excusing her for cause. See Hannon v. State, 638 So.2d 39, 41-42 (Fla.1994); Randolph v. State, 562 So.2d 331, 336-37 (Fla.1990).
Similarly, we find that the trial court did not abuse its discretion in excusing juror Lopez for cause. Although Lopez initially told the court that she was in favor of the death penalty, she later stated that she could not cast the deciding vote recommending a death sentence. Following an overnight recess, Lopez indicated that she was under a lot of stress because of the trial and the possibility of having to decide about the death penalty. Subsequently, she stated for the second time that she could not cast the deciding vote recommending a death sentence. Upon questioning by defense counsel, however, Lopez indicated that she would be able to recommend the death penalty if voting was done by secret ballot. Given the equivocal responses Lopez provided as to whether she could recommend the death penalty, we find the trial court did not abuse its discretion in excusing her for cause.
Next, Franqui argues that the trial court erred in instructing and permitting the jury to be instructed by the State during voir dire that it was required to recommend a death sentence if the aggravating circumstances outweighed the mitigating circumstances. During its opening remarks to the initial venire, the trial court stated, "If you believe that the aggravating factors outweigh the mitigating factors, then the law requires that you recommend a sentence of death." (Emphasis added.) The State argues that this issue was not preserved for appeal because trial counsel did not raise a contemporaneous objection. We disagree. Although defense counsel did not object until a short time after the trial court's opening remarks were completed, we find the purpose of the contemporaneous objection rule was satisfied in this case, i.e., to place the trial judge on notice that an error may have occurred and provide him or her with the opportunity to correct the error at an early stage of the proceedings.
In Henyard v. State, 689 So.2d 239 (Fla.1996), we considered whether a prosecutor's comments during voir dire that jurors must recommend death when aggravating circumstances outweigh mitigating circumstances misstated the law. See id. at 249-50. We held that the prosecutor's comments were misstatements of law because "a jury is neither compelled nor required to recommend death where aggravating factors outweigh mitigating factors." Id.; see also Brooks v. State, 762 So.2d 879, 902 (Fla.2000) (stating that prosecutor misstated the law in commenting that jurors must recommend a death sentence unless the aggravating circumstances are outweighed by the mitigating circumstances); cf. Garron v. State, 528 So.2d 353, 359 & n. 7 (Fla.1988) (finding that it was a misstatement of the law to argue that "when the aggravating factors outnumber the mitigating factors, then death is an appropriate penalty"). For the *1193 same reasons expressed in Henyard, we agree with Franqui that the trial court's comment that the law required jurors to recommend a death sentence if the aggravating circumstances outweighed the mitigating circumstances misstated the law.[5]
As in Henyard, however, we conclude that Franqui was not prejudiced by this error. Despite Franqui's contrary assertions, we find that the trial court's subsequent comments to prospective jurors during voir dire were consistent with the standard jury instructions.[6] More importantly, the trial court did not repeat the misstatement of law when instructing the jury prior to its deliberations. To the contrary, the final jury instructions given in this case were consistent with the standard jury instructions. In addition, the trial court gave defense counsel's requested instruction apprising the jury that the weighing process was not a mere counting of the aggravating and mitigating circumstances, but rather a reasoned judgment as to what the appropriate sentence should be in light of the nature of the aggravating and mitigating circumstances found to exist.[7] This additional instruction was more in accord with Henyard and our seminal decision in State v. Dixon, 283 So.2d 1, 10 (Fla.1973), cert. denied, 416 U.S. 943, 94 *1194 S.Ct. 1950, 40 L.Ed.2d 295 (1974), wherein we stressed:
It must be emphasized that the procedure to be followed by the trial judges and juries is not a mere counting process of X number of aggravating circumstances and Y number of mitigating circumstances, but rather a reasoned judgment as to what factual situations require the imposition of death and which can be satisfied by life imprisonment in light of the totality of the circumstances present.
Under these circumstances, we find the trial court's isolated misstatements of the law during voir dire to be harmless. See Henyard, 689 So.2d at 250. Further, we find that the trial court did not abuse its discretion in refusing to give the curative instruction requested by defense counsel during voir dire. See Foster v. State, 614 So.2d 455, 462 (Fla.1992) (finding trial court did not abuse its discretion in refusing to give instruction on jury's pardon power); Mendyk v. State, 545 So.2d 846, 850 (Fla.1989) (stating that there is no requirement that the jury be instructed on its pardon power); see also Dougan v. State, 595 So.2d 1, 4 (Fla.1992).
Within this issue, Franqui also argues that the trial court erred in permitting the State to instruct the venire that "if mitigation never outweighs the aggravation in your mind, if aggravation is always more powerful, more weighted, than the mitigation, then you vote to recommend the death penalty." Defense counsel objected to this comment, and in response the trial court informed the jury concerning the law relating to the weighing of aggravating and mitigating circumstances. More importantly, as noted above, the final jury instructions given in this case were consistent with the standard jury instructions. Thus, even assuming that the objected-to comment misstated the law, we conclude any error resulting from this isolated comment made during an extensive jury selection process was harmless.[8]See Henyard, 689 So.2d at 250.
Franqui also argues that the trial court erred in overruling defense counsel's objections to arguments made by the State during closing argument. In particular, Franqui alleges that the State improperly made comments outside the scope of the evidence by arguing that he used part of the proceeds from the Kislak Bank robbery to repaint his father-in-law's car so as to avoid arrest and to purchase a gun which was used in the subsequent robbery of Craig Van Ness. Franqui also asserts that the State improperly commented on the robbery of Van Ness, implying that he would have murdered Van Ness if he had not been arrested.[9]
*1195 This Court has held that wide latitude is afforded counsel during argument. See Moore v. State, 701 So.2d 545, 550 (Fla.1997); Breedlove v. State, 413 So.2d 1, 8 (Fla.1982). Logical inferences may be drawn, and counsel is allowed to advance all legitimate arguments. See Thomas v. State, 748 So.2d 970, 984 (Fla. 1999). The standard jury instructions contain cautions that while the arguments of counsel are intended to be helpful and persuasive, such arguments are not to be taken as sources of the law or evidence. Further, the control of comments made to the jury is within the trial court's discretion, and an appellate court will not interfere unless an abuse of discretion is shown. See Occhicone v. State, 570 So.2d 902, 904 (Fla.1990).
As to the comment pertaining to Franqui's use of part of the proceeds from the bank robbery, we find no error. The record reflects that Franqui was unemployed at the time of the offense and had been so since December 1991. Nonetheless, the car used as the getaway vehicle upon abandoning the two stolen vehicles, which was owned by Franqui's father-in-law, was repainted shortly after the crime. The record also indicates that the guns used in the bank robbery were discarded following the crime. However, eleven days after the bank robbery, Franqui and two accomplices robbed and kidnapped Van Ness with a different gun. Based on these facts, we find the State's comment did not constitute an improper attempt to ask the jury to draw a logical inference based upon the evidence. See Mann v. State, 603 So.2d 1141, 1143 (Fla.1992) (holding that merely arguing conclusions which can be drawn from the evidence is "permissible fair comment"). Thus, the trial court did not abuse its discretion in overruling defense counsel's objection to this comment.
On the other hand, we find the State's comment pertaining to the subsequent robbery of Van Ness was improper since it implied that Franqui and his accomplices would have murdered Van Ness had the police not stopped the van and arrested the occupants. Nonetheless, this isolated comment, by itself, does not warrant resentencing. This Court has held that prosecutorial misconduct in the penalty phase must be egregious to warrant vacating the sentence and remanding for a new penalty phase proceeding. See Bertolotti v. State, 476 So.2d 130, 133 (Fla.1985). In light of the record in this case, this single erroneous comment within the State's lengthy closing argument was not so egregious as to taint the validity of the jury's recommendation and require reversal of the entire resentencing proceeding. See id.
Next, Franqui asserts that the trial court erred in refusing defense counsel's request that the jury be given a specific instruction that it could consider the life sentences of codefendants San Martin and Abreu as a mitigating circumstance. The trial court refused the requested instruction, concluding that this issue was *1196 covered by the standard jury instruction regarding nonstatutory mitigation. Contrary to the State's assertion, we find this issue was preserved for review. See Toole v. State, 479 So.2d 731, 733 (Fla.1985) ("The contemporaneous objection rule is satisfied when, as here, the record shows that there was a request for an instruction, that the trial court understood the request, and that the trial court denied the specific request."); see also State v. Heathcoat, 442 So.2d 955, 955-56 (Fla.1983). Nonetheless, we find this issue to be without merit. The trial court gave the standard jury instruction on nonstatutory mitigating circumstances, which explains in part that the jury may consider "any other circumstance of the offense" in mitigation. We have held that this standard jury instruction on nonstatutory mitigating circumstances is sufficient, and there is no need to give separate instructions on each item of nonstatutory mitigation. See Gore v. State, 706 So.2d 1328, 1334 (Fla.1997); San Martin v. State, 705 So.2d 1337, 1349 (Fla. 1997); James v. State, 695 So.2d 1229, 1236 (Fla.1997). Moreover, the trial court read to the jury a stipulation pertaining to the life sentences given to codefendants San Martin and Abreu prior to closing arguments, and the trial court specifically informed defense counsel that he could argue codefendants' life sentences as a mitigating circumstance to the jury, which counsel did during closing argument.
Franqui also argues that the trial court failed to find and weigh all of the nonstatutory mitigating evidence presented at resentencing. Specifically, Franqui contends that the trial court should have found and weighed in mitigation his family history and abandonment by his natural parents, his newfound maturity while incarcerated, and the fact that he did not fire the fatal bullet. This Court has stated that a trial court in its written order must evaluate each mitigating circumstance offered by the defendant and decide if it has been established and, in the case of nonstatutory factors, if it is of a truly mitigating nature. See Campbell v. State, 571 So.2d 415, 419 (Fla.1990). A trial court "must find as a mitigating circumstance each proposed factor that is mitigating in nature and has been reasonably established by the greater weight of the evidence." Id. (footnote omitted). However, a trial court may reject a claim that a mitigating circumstance has been proven, provided the record contains competent substantial evidence to support the rejection. See Mansfield v. State, 758 So.2d 636, 646 (Fla.2000); Ferrell v. State, 653 So.2d 367, 371 (Fla.1995).
First, Franqui argues that the trial court failed to find and weigh in mitigation his family history, including his abandonment by his natural parents. We disagree. The sentencing order reveals that the trial court expressly considered in great detail whether Franqui's family history, including his abandonment by his natural parents, was a mitigating circumstance. Indeed, the trial court made extensive findings and explained its reasoning for rejecting Franqui's family history as a mitigating circumstance. Based upon our review, we find that competent substantial evidence supports the trial court's conclusion.
Similarly, Franqui's contention that the trial court did not find and weigh as a mitigating circumstance his newfound maturity while incarcerated is without merit. Franqui's cousin testified at resentencing that Franqui had requested books on psychology, exercise, fitness, and mental health since his incarceration in order to improve himself. He also testified that Franqui had found religion since being incarcerated. It was this testimony pertaining to Franqui's self-improvement and *1197 faith that served as the basis for his alleged newfound maturity, as exemplified by defense counsel's argument during closing and at the Spencer[10] hearing. The record reflects that the trial court not only considered this evidence, but found Franqui's self-improvement and faith while in custody was established as a mitigating circumstance and entitled to some weight.
Franqui also contends that the trial court failed to find and weigh as a mitigating circumstance the fact that he did not fire the fatal bullet. Although we have indicated that the fact that a defendant did not fire the fatal shot may be a mitigating factor,[11] whether it actually is depends on the particular facts of the case. Here, it is uncontradicted that Franqui shot at Officer Bauer, striking him in the hip. Although this wound alone was not fatal, the medical examiner testified that his findings were consistent with the conclusion that Officer Bauer was first shot in the hip by a bullet which ricocheted off the pillar he took cover behind, causing him to fall forward and be struck by the fatal bullet fired by Gonzalez. Under the particular facts in this case, we find that the trial court did not err in considering, but ultimately rejecting, the fact that Franqui did not fire the fatal bullet as a mitigating circumstance.
Lastly, Franqui challenges the proportionality of his death sentence. In so doing, Franqui first contends that the trial court failed to include in its sentencing order findings that support the Enmund-Tison culpability requirement.[12] We disagree. In its sentencing order, the trial court expressly found that Franqui was prepared to use lethal force to eliminate any impediment to his robbery plan and did not hesitate to actually use such force during the bank robbery. Indeed, the record demonstrates that Franqui surveyed the bank the day before the crime and observed the bank tellers being escorted to their drive-through booths; he came to the bank armed with a .9 mm handgun; and he fired the gun at Officer Bauer, striking him in the hip. Franqui was a direct, active participant in the bank robbery which resulted in Officer Bauer's death, and his actions not only exhibit a reckless indifference to life, but demonstrate that he intended lethal force to be used should he and his accomplices face any resistance during the robbery. Thus, we conclude the Enmund-Tison culpability requirement is satisfied. See San Martin v. State, 705 So.2d 1337, 1345-46 (Fla. 1997); Van Poyck v. State, 564 So.2d 1066, 1070-71 (Fla.1990); DuBoise v. State, 520 So.2d 260, 265-66 (Fla.1988); Diaz v. State, 513 So.2d 1045, 1048 (Fla.1987).
*1198 Nonetheless, Franqui claims that his death sentence is disproportionate. Due to the uniqueness and finality of death, this Court addresses the propriety of all death sentences in a proportionality review. See Porter v. State, 564 So.2d 1060, 1064 (Fla.1990). In conducting this review, this Court considers the totality of the circumstances in a case as compared to other cases in which the death penalty has been imposed, thereby providing for uniformity in the application of the death penalty. See Urbin v. State, 714 So.2d 411, 416-17 (Fla.1998) (quoting Tillman v. State, 591 So.2d 167, 169 (Fla.1991)). The death penalty is reserved for only the most aggravated and the least mitigated of first-degree murders. See Urbin, 714 So.2d at 416; State v. Dixon, 283 So.2d 1, 7 (Fla. 1973).
In this case, the trial court found three aggravating circumstances: (1) the defendant had a prior conviction for a capital or violent felony (great weight); (2) the murder was committed during the course of a robbery and for pecuniary gain, merged (great weight); and (3) the murder was committed to avoid arrest and hinder law enforcement and the victim was a law enforcement officer, merged (great weight).[13] The trial court found no statutory mitigating circumstances, but did find the following four nonstatutory mitigating circumstances: (1) Franqui's relationship with his children (little weight); (2) his cooperation with authorities (little weight); (3) the life sentences imposed on codefendants San Martin and Abreu (little weight); and (4) Franqui's self-improvement and faith while in custody (some weight).
To support his claim that his death sentence is disproportionate, Franqui primarily relies on Curtis v. State, 685 So.2d 1234 (Fla.1996). We find such reliance to be misplaced. In Curtis, we found death to be a disproportionate penalty given the substantial mitigation established in the case, including defendant's age of seventeen years and the fact that the co-perpetrator who fired the fatal shot was sentenced to life. See id. at 1237. By contrast, in this case there is minimal mitigation when weighed against the aggravating circumstances. More importantly, in contrast to Curtis, Franqui was not a minor at the time of the offense and his codefendant who fired the fatal shot was sentenced to death.[14]See Gonzalez v. State, 786 So.2d 559 (Fla. 2001).
We find the circumstances in this case are similar to other cases in which the death penalty has been imposed. For instance, in Armstrong v. State, 642 So.2d 730 (Fla.1994), the defendant shot a police officer after the officer responded to a robbery in progress at a restaurant. The same three aggravating circumstances that exist in this case were found in Armstrong. The defendant in Armstrong also presented evidence of several nonstatutory mitigators. On appeal, this Court affirmed the death sentence. See id. at 740; see also Burns v. State, 699 So.2d 646 (Fla.1997) (affirming death sentence for the murder of a law enforcement officer where avoid arrest and hinder law enforcement aggravating *1199 circumstances were found and merged, there was one statutory mitigating circumstance of no significant criminal history, and insignificant nonstatutory mitigation); Reaves v. State, 639 So.2d 1 (Fla. 1994) (affirming death sentence for the murder of a deputy sheriff, where the record supported the existence of two aggravating circumstances of prior violent felony and avoid arrest, no statutory mitigators, and three nonstatutory mitigators). Accordingly, we find death is a proportionate penalty in this case.
For the reasons stated above, we affirm Franqui's sentence.
It is so ordered.
HARDING and LEWIS, JJ., concur.
WELLS, C.J., concurs in result only with an opinion.
SHAW, J., concurs in part and dissents in part with an opinion, in which ANSTEAD and PARIENTE, JJ., concur.
ANSTEAD, J., concurs in part and dissents in part with an opinion, in which SHAW and PARIENTE, JJ., concur.
QUINCE, J., concurs in result only.
WELLS, C.J., concurring in result only.
I concur in result only. I specifically do not agree with the majority's footnote 5. I believe the majority confuses federal and Florida law by its reference to the Eleventh Federal Circuit's pattern jury instructions. Under Florida law it is not proper for a trial judge to "admonish" a jury as does this federal instruction. Under Florida law the trial judge is required to be much more neutral than in the federal instruction.
Nor do I believe that the Court's statement in Henyard v. State, 689 So.2d 239, 249-250 (Fla.1997), was intended to be a jury instruction. Section 921.141, Florida Statutes, sets out the jury's role, and we should follow the statute. That statute states:
(2) ADVISORY SENTENCE BY THE JURY.After hearing all the evidence, the jury shall deliberate and render an advisory sentence to the court, based upon the following matters:
(a) Whether sufficient aggravating circumstances exist as enumerated in subsection (5);
(b) Whether sufficient mitigating circumstances exist which outweigh the aggravating circumstances found to exist; and
(c) Based on these considerations, whether the defendant should be sentenced to life imprisonment or death.
This is what the jury should be instructed to do, and it is covered by the Standard Jury Instructions.
SHAW, J., concurring in part and dissenting in part.
I dissent from the majority's application of a harmless error analysis to the trial court's opening remarks to the initial venire wherein the trial judge stated:
If you believe that the aggravating factors outweigh the mitigating factors, then the law requires that you recommend a death sentence.
This was a serious misstatement of the law and guaranteed a death sentence if in the jury's opinion the aggravators outweighed the mitigators and the jurors, in obedience to their oath, followed the judge's advice.
The majority's reliance in Henyard v. State, 689 So.2d 239 (Fla.1996), and Brooks v. State, 762 So.2d 879 (Fla.2000), ignores a critical distinction. In Henyard and Brooks the originator of the erroneous misstatement of the law was an advocate, i.e., the prosecutor, not the trial judge as in this instance. Undoubtedly, a jury would and should accord greater weight to *1200 guidance given by the judge than to an advocate's arguments relative to their duty as jurors. The majority's harmless error analysis ignores this reality or does not give proper weight to the source of the misstatements. In Almeida v. State, 748 So.2d 922 (Fla.1999), we implicitly recognized this distinction in finding a prosecutor's improper argument on the law governing a defendant's sanity harmless error by noting, inter alia, that "[t]he misstatement was presented to the jury in the context of closing argument by an advocate, not in the context of an instruction by the court." Id. at 927.
Moreover, unlike Brooks where the trial court immediately responded to the defense's objection to the prosecutor's improper argument by appropriately instructing the jury on the law relating to the weighing of aggravating and mitigating circumstances, the misstatement of law in the instant case was never cogently addressed or straightforwardly corrected despite the fact that the error was brought to the judge's attention in time "to place [him] on notice that an error may have occurred and provide him ... with the opportunity to correct the error at an early stage in the proceedings." Majority op. at 1192.
The majority assumes in its harmless error analysis that the trial court's reading of the standard jury instructions, which included a correct statement of the law, diffused the effect of the earlier misstatement. I feel that this misses the mark. When one considers the litany of instructions the jury is exposed to before retiring to deliberate, it is purely speculative to assume that a serious misstatement of the law given during the voir dire can be overcome by a mechanical reading of a catalog of standard jury instructions, one of which correctly states the law which was misstated at the beginning of the trial. This kind of speculation is not the kind of "principled analysis" which should be the hallmark of a harmless error inquiry. See State v. DiGuilio, 491 So.2d 1129, 1135 (Fla.1986). Accordingly, I dissent.
ANSTEAD and PARIENTE, JJ., concur.
ANSTEAD, J., concurring in part and dissenting in part.
I concur in Justice Shaw's opinion and write separately to emphasize the critical importance of jury instructions in capital cases, especially as they may impact the fairness and constitutionality of a death penalty scheme.
In the U.S. Supreme Court's recent decision in Penry v. Johnson, 532 U.S. 782, 121 S.Ct. 1910, 150 L.Ed.2d 9 (2001), the Court reiterated that "it is only when the jury is given a `vehicle for expressing its "reasoned moral response" to that [mitigating] evidence in rendering its sentencing decision,' that we can be sure that the jury `has treated the defendant as a "uniquely individual human bein[g]" and has made a reliable determination that death is the appropriate sentence.'" Penry, 532 U.S. at ___, 121 S.Ct. at 1920 (citations omitted).
The Supreme Court's admonition in Penry is similar to one contained in this Court's seminal decision in State v. Dixon, 283 So.2d 1 (Fla.1973), cert. denied, 416 U.S. 943, 94 S.Ct. 1950, 40 L.Ed.2d 295 (1974), where in evaluating the constitutionality of Florida's death penalty scheme, we declared:
It must be emphasized that the procedure to be followed by the trial judges and juries is not a mere counting process of X number of aggravating circumstances and Y number of mitigating circumstances, but rather a reasoned judgment as to what factual situations *1201 require the imposition of death and which can be satisfied by life imprisonment in light of the totality of the circumstances present.
Id. at 10; see also Beasley v. State, 774 So.2d 649, 673-74 (Fla.2000) (quoting Dixon). More recently, this Court has cautioned that "a jury is neither compelled nor required to recommend death where aggravating factors outweigh mitigating factors." Henyard v. State, 689 So.2d 239, 249-50 (Fla.1996). In addition, of course, we have long ago established that a jury's recommendation of life will be sustained so long as the record contains any rational basis for the jury's grant of mercy. See Tedder v. State, 322 So.2d 908, 910 (Fla. 1975).

OTHER JURISDICTIONS
The statutory schemes in many other states are similar to Florida's in providing for consideration of aggravating and mitigating circumstances in order for the jury or court to determine an appropriate penalty of life or death. Many states also provide guidance to capital juries similar to that contained in our decisions in Dixon and Henyard.
For example, New Hampshire's statute provides in part:
If an aggravating factor set forth in subparagraph VII(a) and one or more of the aggravating factors set forth in subparagraph VII(b)-(j) are found to exist, the jury shall then consider whether the aggravating factors found to exist sufficiently outweigh any mitigating factor or factors found to exist, or in the absence of mitigating factors, whether the aggravating factors are themselves sufficient to justify a sentence of death. Based upon this consideration, if the jury concludes that the aggravating factors outweigh the mitigating factors or that the aggravating factors, in the absence of any mitigating factors, are themselves sufficient to justify a death sentence, the jury, by unanimous vote only, may recommend that a sentence of death be imposed rather than a sentence of life imprisonment without possibility of parole. The jury, regardless of its findings with respect to aggravating and mitigating factors, is never required to impose a death sentence and the jury shall be so instructed.

N.H.Rev.Stat. Ann. § 630:5(IV) (1996) (emphasis added). Of course, the New Hampshire statutory scheme requires the unanimous vote of the jury for a death recommendation, a safeguard not present in Florida where a death recommendation can be made by a bare majority vote. Obviously, the need for caution is even greater when a bare majority vote carries such significant consequences.
California's statutory scheme for finding and weighing aggravation is also similar to Florida's scheme. See Cal.Penal Code § 190.3 (West 1999). However, in California, the pattern jury instructions for the penalty phase of a death penalty case are much more explicit as to the jury's responsibility:
It is now your duty to determine which of the two penalties, death or imprisonment in the state prison for life without possibility of parole, shall be imposed on [the] [each] defendant.
After having heard all of the evidence, and after having heard and considered the arguments of counsel, you shall consider, take into account and be guided by the applicable factors of aggravating and mitigating circumstances upon which you have been instructed.
An aggravating factor is any fact, condition or event attending the commission of a crime which increases its guilt or enormity, or adds to its injurious consequences which is above and beyond the *1202 elements of the crime itself. A mitigating circumstance is any fact, condition or event which does not constitute a justification or excuse for the crime in question, but may be considered as an extenuating circumstance in determining the appropriateness of the death penalty.
The weighing of aggravating and mitigating circumstances does not mean a mere mechanical counting of factors on each side of an imaginary scale, or the arbitrary assignment of weights to any of them. You are free to assign whatever moral or sympathetic value you deem appropriate to each and all of the various factors you are permitted to consider. In weighing the various circumstances you determine under the relevant evidence which penalty is justified and appropriate by considering the totality of the aggravating circumstances with the totality of the mitigating circumstances. To return a judgment of death, each of you must be persuaded that the aggravating circumstances are so substantial in comparison with the mitigating circumstances that it warrants death instead of life without parole.
1 Cal. Jury Instr.Crim. 8.88 (6th ed. Supp.2001) (emphasis added).
Not surprisingly, cases have arisen in California where the defendant alleges that the jury was misled as to its sentencing function when the court instructed the jury that it shall impose a sentence of death if the aggravating circumstances outweigh the mitigating circumstances. In People v. Brown, 40 Cal.3d 512, 230 Cal. Rptr. 834, 726 P.2d 516 (1985), rev'd on other grounds, 479 U.S. 538, 107 S.Ct. 837, 93 L.Ed.2d 934 (1987), the California Supreme Court, much like this Court in Dixon, explained that the jury's discretion was not limited:
Similarly, the reference to "weighing" and the use of the word "shall" in the 1978 law need not be interpreted to limit impermissibly the scope of the jury's ultimate discretion. In this context, the word "weighing" is a metaphor for a process which by nature is incapable of precise description. The word connotes a mental balancing process, but certainly not one which calls for a mere mechanical counting of factors on each side of the imaginary "scale," or the arbitrary assignment of "weights" to any of them. Each juror is free to assign whatever moral or sympathetic value he deems appropriate to each and all of the various factors he is permitted to consider, including factor "k" as we have interpreted it. By directing that the jury "shall" impose the death penalty if it finds that aggravating factors "outweigh" mitigating, the statute should not be understood to require any juror to vote for the death penalty unless, upon completion of the "weighing" process, he decides that death is the appropriate penalty under all the circumstances. Thus the jury, by weighing the various factors, simply determines under the relevant evidence which penalty is appropriate in the particular case.
Id. at 854, 726 P.2d at 532 (footnote omitted). The court recognized that, under some circumstances, the instruction might confuse a penalty jury regarding the fundamental character of the capital sentencing process.[15] Thus, the court noted that *1203 any case in which the mandatory language was used "must be examined on its own merits to determine whether, in context, the sentencer may have been misled to defendant's prejudice about the scope of its sentencing discretion under the 1978 law." 230 Cal.Rptr. at 856 n. 17, 726 P.2d at 534 n. 17.[16]
In Geary v. State, 114 Nev. 100, 952 P.2d 431 (1998) (on rehearing), the Nevada Supreme Court addressed the potentially confusing nature of a final jury instruction given in capital cases which provided:
The defendant in the case has been found guilty of murder in the first degree.
Under the law of this State, you must now determine the sentence to be imposed upon the defendant. First degree murder is punishable by death only if the jury finds one or more aggravating circumstances have been proved beyond a reasonable doubt and the jury further finds that any mitigating circumstances do not outweigh the aggravating circumstances.
Otherwise, murder in the first degree is punishable by imprisonment in the state prison for life with or without the possibility of parole.
Id. at 432. In a prior decision, the court had concluded that this same instruction may have misled the jury into believing that it was required to automatically impose the death sentence if it found that the aggravating circumstances outweighed the mitigating circumstances. See id. (referring to Geary v. State, 112 Nev. 1434, 930 P.2d 719 (1996)). Thereafter, the state filed a motion for rehearing noting that the same jury had also been instructed that imposing the death sentence was not mandatory even after a finding that the aggravating circumstances outweighed the mitigating circumstances. On rehearing, the court agreed, finding it had overlooked the existence of the other instruction, which it found sufficiently informed the jury that a death sentence is never mandatory. See id. Nevertheless, to prevent future uncertainty, the court set forth the following additional instruction for district courts to give in the sentencing phase of all capital cases:
The jury must find the existence of each aggravating circumstance, if any, unanimously and beyond a reasonable doubt.
The jurors need not find mitigating circumstances unanimously. In determining the appropriate sentence, each juror must consider and weigh any mitigating circumstance or circumstances which that juror finds.
The jury may impose a sentence of death only if:
1) The jurors find unanimously and beyond a reasonable doubt that at least one aggravating circumstance exists;
2) Each and every juror determines that the mitigating circumstance or circumstances, *1204 if any, which he or she has found do not outweigh the aggravating circumstance or circumstances; and
3) The jurors unanimously determine that in their discretion a sentence of death is appropriate.
Id. at 433 (emphasis added). Subsequent cases in Nevada have consistently reiterated the principle that the jury always retains the discretion to decide whether it considers death the appropriate penalty. See Hollaway v. State, 6 P.3d 987, 996 (Nev.2000); Middleton v. State, 114 Nev. 1089, 968 P.2d 296, 315 (1998).
In New York, Criminal Procedure Law section 400.27 sets forth the procedure for determining a defendant's sentence upon conviction for first-degree murder. In particular, section 400.27 provides:
11. (a) The jury may not direct imposition of a sentence of death unless it unanimously finds beyond a reasonable doubt that the aggravating factor or factors substantially outweigh the mitigating factor or factors established, if any, and unanimously determines that the penalty of death should be imposed. Any member or members of the jury who find a mitigating factor to have been proven by the defendant by a preponderance of the evidence may consider such factor established regardless of the number of jurors who concur that the factor has been established.
(b) If the jury directs imposition of either a sentence of death or life imprisonment without parole, it shall specify on the record those mitigating and aggravating factors considered and those mitigating factors established by the defendant, if any.
N.Y.Crim. Proc. Law § 400.27(11) (McKinney Supp.2001) (emphasis added). In accordance with section 400.27, the New York standard jury instructions provide in part:
Members of the jury, I will now explain how you are to consider the aggravating and mitigating factors in making your sentencing determination in this case.
Our law does not suggest or imply that a sentence of death is expected or appropriate for a defendant found guilty of murder in the first degree.
Our law provides that a jury may not direct the imposition of a sentence of death unless, after due deliberation, the jury unanimously finds, beyond a reasonable doubt, that the aggravating factor substantially outweighs any and all mitigating factors established by the defendant, and unanimously determines that the penalty of death should be imposed.

In other words, you as a jury may not direct the imposition of a sentence of death unless each of you, individually, makes the following two determinations:
First, that, beyond a reasonable doubt, the aggravating factor in the case substantially outweighs any and all mitigating factors that you personally find to have been established, and second, that the penalty of death should be imposed.
. . . .
The process of determining whether, beyond a reasonable doubt, the aggravating factor substantially outweighs the mitigating factors is not subject to a mathematical formula. Rather, it requires an analysis and evaluation of the aggravating and mitigating factors.
In order to conduct that analysis and evaluation, you must consider three questions:
First, to what extent, if any, does the aggravating factor support a sentence of death for this defendant in this case?
Second, to what extent, if any, do the mitigating factors, individually or collectively, *1205 support a sentence other than death for this defendant in this case? And, third, does the extent to which the aggravating factor supports a sentence of death substantially outweigh beyond a reasonable doubt the extent to which the mitigating factors support a sentence other than death?
If each one of you concludes beyond a reasonable doubt that the aggravating factor substantially outweighs any and all mitigating factors, then you must go on to consider whether, under all the facts and circumstances of this case, you as a jury unanimously determine that a sentence of death should be imposed. In other words, you must consider whether, under all the facts and circumstances of this case, you as a jury unanimously determine that death is the fitting and appropriate punishment that should be imposed upon the defendant.
If each one of you concludes that, beyond a reasonable doubt, the aggravating factor substantially outweighs any and all mitigating factors that you individually find to exist, and that a sentence of death should be imposed, then and only then may you as a jury direct the imposition of a sentence of death.
On the other hand, if any one of you has a reasonable doubt as to whether the aggravating factor substantially outweighs the mitigating factors established in the case, or, if any one of you does not agree that a sentence of death should be imposed, then you as a jury may not direct the imposition of a sentence of death.
Capital Sentencing Proceeding Basic Final Instructions section 440.27 available at http://www.courts.state.ny.us/cji/capsntfi.htm (emphasis added). Hence, while New York requires a unanimous jury vote for a death recommendation, its standard jury instructions contain numerous cautions to the jury as to the exercise of its discretion in determining an appropriate penalty.
Missouri also has pattern jury instructions in death cases, one of which explicitly informs the jury that it is never required to recommend a death sentence. For example, in State v. Petary, 790 S.W.2d 243 (Mo.1990), the following jury instruction was cited:
You are not compelled to fix death as the punishment even if you do not find the existence of one or more mitigating circumstances sufficient to outweigh the aggravating circumstance or circumstances which you find to exist. You must consider all the circumstances in deciding whether to assess and declare the punishment at death. Whether that is to be your final decision rests with you.
Id. at 244-45. The above instruction is referred to as the "life option" instruction. See State v. Storey, 40 S.W.3d 898, 912 (Mo.2001).

CONCLUSION
Most of the sample pattern jury instructions set forth above have aspects which arguably should be included in Florida's standard jury instructions for penalty phase proceedings in capital cases. Most notably, and, consistent with this Court's decisions in Dixon and Henyard, these pattern jury instructions explicitly inform the jury that the "weighing" process is not a mere numerical or mathematical calculation, but rather involves a reasoned judgment and analysis of the circumstances and ultimately a choice left to the discretion of the jury based upon all of the circumstances presented.
While we have been diligent in reminding trial court judges of the qualitative process they must follow in determining an *1206 appropriate sentence in each individual case, we must not overlook the importance of such instructions for Florida juries. Although the Dixon and Henyard holdings are consistently repeated in our case law, including such guidance in the standard jury instructions would obviously aid the jury in understanding its role and responsibility during deliberations by further clarifying the "weighing" process.
SHAW and PARIENTE, JJ., concur.
NOTES
[1] Although Franqui developed a marital relationship with his girlfriend and they had two children together, the record reflects that they never officially married.
[2] The trial court found the following three aggravating circumstances: (1) Franqui had a prior conviction for a capital or violent felony (great weight); (2) the murder was committed during the course of a robbery and for pecuniary gain, merged (great weight); and (3) the murder was committed to avoid arrest and hinder law enforcement and the victim was a law enforcement officer, merged (great weight).
[3] The trial court considered and rejected Franqui's age as a mitigating circumstance based on his maturity at the time of the murder. In addition, the trial court concluded no evidence presented reasonably established any of the other statutory mitigating circumstances.
[4] The trial court found the following four nonstatutory mitigating circumstances: (1) Franqui's relationship with his children (little weight); (2) cooperation with authorities (little weight); (3) life sentences imposed on codefendants San Martin and Abreu (little weight); and (4) self-improvement and faith while in custody (some weight). The trial court rejected Franqui's family history and the fact that he did not fire the fatal bullet as nonstatutory mitigating circumstances.
[5] We also ask that the Committee on Standard Jury Instructions in Criminal Cases review the standard instructions to be certain our opinions in Henyard, Brooks and Garron have been properly considered, and to consider whether additional instructions such as those given by the trial court here should be included in the standard instructions. See note 7, infra. We note, for example, that the Eleventh Circuit's pattern jury instructions for death penalty cases provide in part:

If, after weighing the aggravating and mitigating factors, you determine that the aggravating factors found to exist sufficiently outweigh the mitigating factors; or, in the absence of mitigating factors, if you find that the aggravating factors alone are sufficient, you may exercise your option to recommend that a sentence of death be imposed rather than some lesser sentence. Regardless of your findings with respect to aggravating and mitigating factors, however, you are never required to recommend a sentence of death.
. . . .
The process of weighing aggravating and mitigating factors to determine the proper punishment is not a mechanical process. The law contemplates that different factors may be given different weights or values by different jurors. In your decision making process, you, and you alone, are to decide what weight is to be given to a particular factor.
Your only interest is to seek the truth from the evidence and to determine in the light of that evidence and the Court's instructions whether to recommend a sentence of death. If you do not recommend a sentence of death, the Court is required by law to impose a sentence other than death, which sentence is to be determined by the Court alone. Let me admonish you again, while you may recommend a sentence of death, you are not required to do so.
Pattern Jury Instructions (Criminal Cases), Offense Instruction 76.4 (Eleventh Circuit District Judges Ass'n 1997) (emphasis added).
[6] We do note, however, that the trial court did repeat its prior statement that the law requires the jury to recommend a death sentence if the aggravating circumstances outweigh the mitigating circumstances during individual voir dire of juror Hernandez, who was subsequently removed for cause.
[7] In particular, the trial court instructed the jury:

It must be emphasized that the weighing process is not a mere counting of the number of aggravating circumstances and the number of mitigating circumstances. But rather, a reasoned judgment as to what the appropriate sentence in this case in light of the nature and aggravating factors that you find-excuse me, aggravating and mitigating factors that you find.
The record reveals that the latter part of the trial court's written instructions read: "[B]ut rather a reasoned judgement as to what the appropriate sentence is in this case in light of the nature of the aggravators and mitigators you find."
[8] At oral argument, Franqui's appellate counsel also argued that the State misstated the law during closing argument in commenting, "[I]f the aggravation is always stronger, always more powerful in your hearts and in your minds, the Judge is going to tell you it's your obligation that you should vote to recommend for the death penalty." No objection was made to this comment at trial, nor was this issue raised in Franqui's brief. Nevertheless, we take this opportunity to caution prosecutors to avoid using language instructing the jury that it has a duty or obligation to recommend death. See Urbin v. State, 714 So.2d at 411, 421 (Fla.1998); Garron, 528 So.2d at 359.
[9] In particular, the State argued:

January 14, a very wonderful thing happens to the people of Dade County. This defendant gets arrested. He's in custody. Or perhaps, you thought, like perhaps the defendant thought, this would never end. But it did end. Maybe by luck, maybe by accident, a uniformed officer sees somebody, looks a little hinky [sic] inside a van, guy starts to flee from him, follows him and catches him and look what happens. He catches somebody on what was a traffic offense, only to find out he's got a man held at gunpoint whose been kidnaped here and it's the same gang that's involved in this crime and this crime and this crime.
And if there wasn't that police officer there, who just happened to have seen what took place on January 14, I don't want to guess about
[DEFENSE COUNSEL]: Objection.
[THE COURT]: All right. This is argument. Overruled.
[STATE]: I don't want to guess about how that day would have ended. But it's nice to know that Craig Van Nest [sic] was able to walk into a courtroom some time later, tell a jury what had taken place and this defendant was convicted of those crimes as well.
[10] Spencer v. State, 615 So.2d 688 (Fla.1993).
[11] See, e.g., Curtis v. State, 685 So.2d 1234, 1237 (Fla.1996) (noting as a mitigating circumstance the fact that defendant did not kill the victim and his bullet merely struck victim in the foot after co-perpetrator had fired the fatal shot); cf. Taylor v. State, 294 So.2d 648, 652 (Fla.1974) (noting that downward trajectory of the fatal bullet at least raised the possibility that the defendant had not fired the shot).
[12] In Enmund v. Florida, 458 U.S. 782, 102 S.Ct. 3368, 73 L.Ed.2d 1140 (1982), the United States Supreme Court held that imposition of the death penalty in a felony murder case in which the defendant did not kill, attempt to kill, or intend that a killing take place or that lethal force be employed violates the Eighth Amendment prohibition against cruel and unusual punishment as applied to the states through the Fourteenth Amendment of the United States Constitution. In Tison v. Arizona, 481 U.S. 137, 107 S.Ct. 1676, 95 L.Ed.2d 127 (1987), the Court held that a finding of major participation in the felony committed, combined with reckless indifference to human life, is sufficient to satisfy the Enmund culpability requirement for consistency with the Eighth Amendment.
[13] Although Franqui does not challenge the trial court's finding as to any of the aggravating circumstances, we find that the record reveals competent substantial evidence to support the three aggravating circumstances.
[14] The three other codefendants involved in this crime were sentenced to life. See Fernandez v. State, 730 So.2d 277 (Fla.1999) (imposing life sentence); San Martin v. State, 717 So.2d 462 (Fla.1998) (reversing jury override and imposing life sentence). Codefendant Abreu received a life sentence as a result of a plea negotiation.
[15] In People v. Bonin, 47 Cal.3d 808, 254 Cal.Rptr. 298, 765 P.2d 460 (1989), the court commented on Brown as follows:

Although in Brown we upheld the constitutionality of section 190.3, we nevertheless recognized that when delivered in an instruction the provision's mandatory sentencing language might mislead jurors as to the scope of their sentencing discretion and responsibility. Specifically, a juror might reasonably understand that language to define the penalty determination as "simply a finding of facts" or "a mere mechanical counting of factors on each side of the imaginary `scale.'" A juror might also reasonably understand the language to require him to vote for death if he finds that the evidence in aggravation outweighs the evidence in mitigationeven if he determines that death is not the appropriate penalty under all the circumstances.
Id. at 327, 765 P.2d at 489 (citations omitted).
[16] Following the court's opinion in Brown, the pattern jury instruction was changed to conform almost verbatim to a proposed jury instruction the court mentioned in footnote 19 of its opinion. See Brown, 230 Cal.Rptr. 834, 726 P.2d at 535 n. 19; see also 1 Cal. Jury Instr. Crim. 8.88 (6th ed. Supp.2001) (set forth above in opinion and including language that the weighing process is not a mere mechanical weighing of factors).