965 So.2d 22 (2007)
Leonardo FRANQUI, Appellant,
v.
STATE of Florida, Appellee.
Leonardo Franqui, Petitioner,
v.
James R. McDonough, etc., Respondent.
Nos. SC04-2380, SC06-36.
Supreme Court of Florida.
May 3, 2007.
Rehearing Denied September 10, 2007.
*26 Mary Catherine Bonner, Fort Lauderdale, FL, for Appellant/Petitioner.
Bill McCollum, Attorney General, Tallahassee, Florida and Sandra S. Jaggard, Assistant Attorney General, Miami, FL, for Appellee/Respondent.
PER CURIAM.
Franqui appeals an order of the circuit court denying his motion to vacate his conviction of first-degree murder and sentence of death filed under Florida Rule of Criminal Procedure 3.851 and petitions this Court for a writ of habeas corpus. We have jurisdiction. See art. V, § 3(b)(1), (9), Fla. Const. For the reasons expressed below, we affirm the circuit court's order denying postconviction relief and deny Franqui's habeas petition.

FACTS AND PROCEDURAL HISTORY
The facts of this crime are set forth in our opinion from Franqui's direct appeal after resentencing, Franqui v. State, 804 So.2d 1185 (Fla.2001) (Franqui II). For the purposes of these proceedings, we note that Franqui was convicted of first-degree murder of a law enforcement officer, armed robbery, aggravated assault, two counts of grand theft, and two counts of burglary following the robbery of Kislak National Bank in North Miami. Id. at 1189-90. Franqui was sentenced to death by the trial court after a jury recommended a death sentence by a vote of nine to three. Id. at 1190. Franqui's convictions were affirmed on his first direct appeal but his case was remanded for resentencing. See Franqui v. State, 699 So.2d 1332, 1333 (Fla.1997) (Franqui I). After a new penalty phase, Franqui was again sentenced to death after a jury recommendation for death by a vote of ten to two. *27 Franqui II, 804 So.2d at 1190. In sentencing Franqui to death, the judge found three aggravating circumstances,[1] no statutory mitigating circumstances,[2] and four nonstatutory mitigating circumstances.[3]Id. at 1191. In his second direct appeal to this Court, Franqui raised six claims for relief. Id. This Court rejected all six claims and affirmed Franqui's death sentence. Id. at 1199.
Franqui filed a rule 3.851 petition for postconviction relief on April 7, 2003, raising eighteen claims for relief.[4] The trial court granted an evidentiary hearing on four claims: whether the waiver of his right to testify was voluntary, whether counsel was ineffective for failing to prosecute a motion to suppress his confession, whether counsel was ineffective for failing to present relevant witnesses at a hearing on Franqui's motion to suppress, and whether counsel was ineffective for failing to litigate the involuntary nature of his confession to the sentencing jury. The trial court ultimately denied postconviction relief on all claims. Franqui now appeals that decision to this court, raising eight claims of trial court error. He has also filed a petition for writ of habeas corpus in this Court.
*28 Franqui was also sentenced to death for the first-degree murder of Raul Lopez during the robbery of a check-cashing business in Hialeah (the "Hialeah murder"). Franqui v. State, 699 So.2d 1312, 1315 (Fla.1997). On direct appeal, this Court found error regarding the admission of evidence but found that error to be harmless and affirmed Franqui's convictions and sentences, including his death sentence. Id. Franqui subsequently filed a 3.851 motion for postconviction relief in that case. That motion was also denied by the trial court and review by this Court is pending in a separate appeal.

POSTCONVICTION CLAIMS

1. Ineffective Assistance of Trial Counsel
Franqui alleges that his trial counsel, Eric Cohen, was ineffective for failing to litigate the motion to suppress Franqui's confession, failing to present mental health mitigation and evidence of coercion at Franqui's resentencing, and for conduct during voir dire regarding two potential jurors.
Based upon the United States Supreme Court's decision in Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), this Court has held that for ineffective assistance of counsel claims to be successful, two requirements must be satisfied:
First, the claimant must identify particular acts or omissions of the lawyer that are shown to be outside the broad range of reasonably competent performance under prevailing professional standards. Second, the clear, substantial deficiency shown must further be demonstrated to have so affected the fairness and reliability of the proceeding that confidence in the outcome is undermined. A court considering a claim of ineffectiveness of counsel need not make a specific ruling on the performance component of the test when it is clear that the prejudice component is not satisfied.
Maxwell v. Wainwright, 490 So.2d 927, 932 (Fla.1986) (citations omitted).
Because both prongs of the Strickland test present mixed questions of law and fact, this Court employs a mixed standard of review, deferring to the circuit court's factual findings that are supported by competent, substantial evidence, but reviewing the circuit court's legal conclusions de novo. See Sochor v. State, 883 So.2d 766, 771-72 (Fla.2004).
There is a strong presumption that trial counsel's performance was not ineffective. See Strickland, 466 U.S. at 690, 104 S.Ct. 2052. "A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." Id. at 689, 104 S.Ct. 2052. The defendant carries the burden to "overcome the presumption that, under the circumstances, the challenged action `might be considered sound trial strategy.'" Id. (quoting Michel v. Louisiana, 350 U.S. 91, 101, 76 S.Ct. 158, 100 L.Ed. 83 (1955)). "Judicial scrutiny of counsel's performance must be highly deferential." Id. In Occhicone v. State, 768 So.2d 1037, 1048 (Fla.2000), this Court held that "strategic decisions do not constitute ineffective assistance of counsel if alternative courses have been considered and rejected and counsel's decision was reasonable under the norms of professional conduct." We have also explained that where this Court has previously rejected a substantive claim on the merits, counsel cannot be deemed ineffective for failing to advance the same claim in the trial court. *29 Melendez v. State, 612 So.2d 1366, 1369 (Fla.1992).

A. Failure to Litigate the Motion to Suppress Franqui's Confession
Franqui raised a number of claims in the trial court involving an assertion that trial counsel did not properly litigate a motion to suppress Franqui's confession. Prior to the guilt phase in the instant trial, defense counsel agreed to the trial court's use of the transcripts from a hearing on a similar suppression motion filed in the Hialeah murder case. Upon review, we find no fault with the lower court's conclusion that trial counsel's decision to stipulate to the use of the transcripts from the Hialeah case hearing was reasonable.[5]
After being detained and questioned, Franqui gave two separate statements to the police on the same day regarding both the instant crime and the Hialeah murder, and trial counsel ultimately moved to suppress both confessions in each case. However, the evidentiary hearing on the motion to suppress the Hialeah statement occurred a little more than one year prior to the hearing on the instant motion to suppress. The record of the hearing in the Hialeah case indicates that the focus of that hearing was on both the circumstances of the instant crime and statement as well as the Hialeah crime and confession. The testimony from all of the witnesses presented at that hearing, Franqui included, focused on both statements: the officers detailed when Franqui was read his rights during the day and in relation to which crime, and defense counsel Cohen questioned each of them in great detail, including asking them to specify at which points Franqui supposedly agreed to keep talking without counsel present. Thus, the underlying circumstances relating to the issues Franqui is now claiming were not fully explored in the instant hearing were in fact comprehensively explored during the previous hearing in the Hialeah case in front of the same judge and with the same parties. As defense counsel Cohen explained to the court in agreeing to the stipulation for use of the transcripts, any testimony and cross-examination of Officers Crawford, Rivers and Smith was likely to be "identical."[6] Under these circumstances, defense counsel could have reasonably concluded that requiring these officers to be called again was unnecessary and potentially counterproductive. Given the comprehensive nature of the first hearing in the Hialeah case on a statement taken the exact same day arising out of the same interrogation and involving all of the same parties, being heard in front of the same judge, we find no error in the postconviction court's conclusion that Cohen acted reasonably in stipulating to the use of the prior testimony of Rivers, Crawford and Smith at the hearing on the instant motion to suppress.
Franqui asserts further, however, that despite the comprehensive nature of the prior hearing, trial counsel was ineffective at the instant suppression hearing for failing to present evidence of Franqui's mental illness and expert testimony on *30 coerciveness. First, Franqui argues that trial counsel should have presented evidence of his supposed mental illness at the suppression hearing to demonstrate that Franqui was not capable of making a valid waiver of his rights when making his confession. He asserts that defense counsel should have presented a letter from Dr. Jethro Toomer to trial counsel Cohen, which Cohen received during the period between the trial court's denial of the motion to suppress in the Hialeah case and the hearing on the motion to suppress in the instant case. This letter makes a number of findings based on two meetings between Dr. Toomer and Franqui, including observations of personality disorganization, overall mental confusion and spotty memory. The letter stated that Franqui suffers from extreme mental and emotional disturbance and severe impairment of cognitive functioning, and concluded by characterizing Franqui as an individual "whose behavior is characterized by a pervasive pattern of instability" with resulting behavior that is "impulsive, irrational, maladaptive and self-destructive."
At the evidentiary hearing below, Cohen testified that he did not utilize this information at the suppression hearing because Dr. Toomer had been retained solely for use at the penalty phase and also because, throughout their relationship, Cohen did not observe any signs of mental impairment in Franqui that would cause him to conclude that Franqui was incompetent during his police questioning.
We find no error in the trial court's conclusion that counsel's actions were reasonable and did not constitute ineffectiveness under Strickland. First, assuming Cohen believed his client, Franqui's testimony from the Hialeah suppression hearing indicates that he understood his rights, that he wished to invoke them, and that he only gave the statements he did due to police misconduct, including blatant abuse and coercion. In other words, Franqui's testimony at the suppression hearing asserted no waiver was given and raised no issues of mental competency. Rather, his testimony at the suppression hearing directly contradicted that of the police, affirmatively asserting that he understood his rights and invoked them, but that his invocation was ignored and that he was abused and coerced by the police into giving a confession. Franqui does not suggest how this prior testimony could have been utilized during the instant suppression hearing had Cohen adopted a new strategy claiming that Franqui was incompetent.
In addition, as noted above, Cohen testified at the postconviction evidentiary hearing that he had observed no mental problems with Franqui. He also stated that Dr. Toomer had been called as a witness during the penalty phase in the Hialeah trial six months prior to the suppression hearing in the instant case; the same trial judge found substantial problems with Toomer's credibility.[7] In fact, in the Hialeah *31 sentencing order, issued some six months prior to the suppression hearing, the trial court expressly rejected Dr. Toomer's credibility and his opinions. The trial court questioned Dr. Toomer's "leap" from a diagnosis of borderline personality disorder to the conclusion that Franqui was acting under the influence of "extreme mental or emotional disturbance." The trial court concluded that "every piece of evidence presented in this trial, penalty phase and sentencing hearings, with the exception of Dr. Toomer's testimony, definitely establishes that Mr. Franqui is not mentally retarded."
Considering all of these circumstances, we find no error in the postconviction court's conclusion that deficient performance by defense counsel has not been established given Strickland's presumption that trial counsel's performance was not ineffective. See Strickland, 466 U.S. at 689, 104 S.Ct. 2052 ("A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time."). There is competent, substantial evidence in the record to support these rulings by the postconviction court.
Franqui next argues that trial counsel was ineffective for failing to present expert testimony at the suppression hearing regarding the effect of police coercion during interrogations. Franqui's witness at the postconviction evidentiary hearing below, Dr. Meisner, testified as an expert in police interrogations and confessions, expressing the opinion that coercion could have played a role in Franqui's confession. However, this witness also explained that there was only one expert who routinely gave testimony in this field in the early 1990s; furthermore, there was no showing that such an expert was known to or readily available to defense counsel at the time of Franqui's trial. In addition, trial counsel is granted great latitude in decisions regarding the use of expert witnesses. Thus, we find no error in the lower court's conclusion that deficient performance has not been established pursuant to a Strickland analysis for failing to call an expert on interrogation tactics at the suppression hearing, given that the use of experts in this area of the law was relatively new and unexplored at the time of Franqui's trial.

B. Resentencing
Franqui claims that trial counsel was ineffective for failing to relitigate the suppression of his confession during his resentencing (penalty phase) trial. We find no error in the trial court's rejection of the argument that trial counsel was ineffective for failing to present this issue to the resentencing jury. Since such evidence would presumably have been used to *32 cast doubt upon the admissibility or veracity of Franqui's confession to establish his guilt, it would not have been relevant to sentencing issues or admissible in the sentencing phase. See Way v. State, 760 So.2d 903, 916 (Fla.2000) ("[T]his Court has previously rejected the argument that evidence that would serve only to create a lingering doubt of the defendant's guilt is admissible as a nonstatutory mitigating circumstance.") (citing Preston v. State, 607 So.2d 404, 411 (Fla.1992); King v. State, 514 So.2d 354, 358 (Fla.1987)). Franqui has made no showing in this appeal of the relevancy of such evidence for purposes of sentencing.
Franqui also alleges that trial counsel was ineffective for failing to present Dr. Toomer's letter to the resentencing court. However, this claim was not raised in the trial court, nor was there any type of similar claim in which Franqui alleged error for failing to present the Toomer letter to the resentencing jury or judge as a means of establishing mental health mitigation. Accordingly, this claim is procedurally barred as an argument raised for the first time on appeal to this Court. See Griffin v. State, 866 So.2d 1, 11 n. 5 (Fla. 2003) (finding that postconviction claim raised for the first time on appeal was procedurally barred).
In addition, the record from Franqui's resentencing indicates that, regardless of any procedural bar, he is entitled to no relief. First, trial counsel Cohen testified at the evidentiary hearing that, while the primary reason he had Dr. Toomer evaluate Franqui was in preparation for the penalty phase, Cohen and Franqui jointly agreed to not present the letter at resentencing. The resentencing record reflects a specific discussion about Dr. Toomer's letter report:
THE COURT: All right. I'll allow you to make arguments later. Any other evidence or testimony on the behalf of Mr. Franqui?
MR. COHEN: No, your Honor.
THE COURT: All right. You had indicated the last time you were considering presenting the former testimony of one of the doctors, you and Mr. Franqui have agreed not to present that?
MR. COHEN: Unfortunately, Judge, the situation is that we have not been able to find a report. But based on our conversations previously, I don't think that there's anything in that report that we would be submitting to the Court.
THE COURT: I just want to make sure there's not a claim later that not finding the report in some way 
MR. COHEN: No.
THE COURT: prevented you from making an effective presentation or prevents me from making an appropriate sentence. Does the State have a copy of the report?
MR. COHEN: We don't have the report present now but obviously we reviewed the report previously and the doctor did testify at the sentencing hearing of what we refer to as the Hialeah case. So we're well aware of contents and the findings of the doctor. And it's our decision not to present that evidence to the jury and I don't see any reason why that decision would change in presenting any evidence to the Court.
THE COURT: All right. Have you spoken to Mr. Franqui with about [sic] that?
MR. COHEN: We mentioned it briefly the other day. I don't think he has any different feelings about that.
THE COURT: Mr. Franqui, do you agree with Mr. Cohen's decision not to have me consider the testimony or the report of that doctor?
MR. FRANQUI: Yes, your honor.

*33 THE COURT: Is there anything Mr. Franqui would like to say?
MR. COHEN: I don't believe so, Your Honor.
MR. FRANQUI: No, your Honor.
Thus, the record reflects that Cohen and Franqui made a joint, strategic decision not to present this evidence at resentencing.[8] We find no error in the trial court's conclusion that Franqui is not entitled to relief on this claim. See Occhicone, 768 So.2d at 1048.

C. Voir Dire
Franqui next asserts error in defense counsel's actions during jury selection. His argument, however, is unclear: first, Franqui takes issue with the lower court's dispensation of this claim as a Batson-Neil issue;[9] Franqui argues that since both he and juror Diaz were both Hispanic males, there was no need for trial counsel to articulate a race-neutral reason as a basis for a preemptory strike of Diaz when the State objected. He asserts that the issue for this Court to decide is whether a race-neutral reason must be given by a defendant when he wishes to strike a juror of his own race, gender and ethnicity. In addition, Franqui appears to assert an ineffective assistance of counsel claim for not objecting to the trial court's failure to strike juror Andani.[10] In the postconviction court Franqui asserted that counsel's delay in presenting neutral reasons beyond his bare dislike of Diaz resulted in the seating of a juror whose ability to be fair was subject to question. Regarding Andani, Franqui argued that counsel failed to preserve trial court error in disallowing a defense strike since, when the State challenged the strike, defense counsel declined to be heard.
We find no error in the trial court's denial of relief on this claim since Franqui has shown neither deficient performance nor prejudice. First, as the court below noted, we addressed the seating of these two jurors in Franqui I. Regarding Diaz, we held that "the trial court did not abuse its discretion in striking Franqui's peremptory challenge." Franqui I, 699 So.2d at 1335. This Court further ruled: "We also reject Franqui's contention that the trial court erred in refusing to permit him to challenge prospective juror Andani." Id. at 1335 n. 6. We conclude that Franqui should not be permitted to relitigate these claims under the guise of ineffective assistance of counsel when the same issues were resolved against him on appeal. Harvey v. Dugger, 656 So.2d 1253, 1256 (Fla.1995) ("It is also not appropriate to use a different argument to relitigate the same issue.") (citing Medina v. State, 573 So.2d 293, 295 (Fla.1990)). In addition, Franqui has made no showing of any prejudice that could have resulted from defense counsel's alleged deficiencies on these jury issues.

2. Judicial Assignment
Franqui's next argument asserts that he was denied due process of law when the same trial judge presided over his two death cases. The trial court dismissed this claim without an evidentiary *34 hearing. As explained in the order denying relief,
The facts are not in dispute. [Franqui] was charged in four separate cases (including two separate first-degree murder cases), all of which were pending at the same time. By administrative order, the first case was assigned (randomly) to a felony trial division. So long as that case remained open and pending (i.e., not resolved by plea, trial, or dismissal), all subsequently-filed cases involving that same defendant were assigned to the same trial division. As a result of this administrative procedure, all of [Franqui's] cases were assigned to a single judge. [Franqui] argues this procedure is inherently unfair.
The lower court concluded that this claim was procedurally barred since, under prevailing Florida law, Franqui should have raised this claim prior to trial. In addition, the trial court held that a judge is not subject to disqualification in a case simply because that judge has made adverse rulings against the defendant in the past or because the judge has previously heard some of the facts of the case.
Franqui did not allege ineffective assistance of counsel for failure to insist upon a different judge in the instant case; rather, Franqui claimed that his due process rights were violated by reason of the administrative procedures invoked in this case.[11] The lower court correctly concluded that this claim is procedurally barred because it was not properly asserted before trial. Further, Wild v. Dozier, 672 So.2d 16 (Fla.1996), establishes that this Court has exclusive jurisdiction to review administrative orders making judicial assignments. Id. at 17 ("[W]e conclude that this Court has exclusive jurisdiction to review judicial assignments.").
Franqui also claims that his due process rights were violated because the same judge sentenced him to death in both of Franqui's murder cases. This argument, however, is refuted by the record. While the same judge did initially sentence Franqui to death in the Hialeah case and the instant case, ultimately Franqui's death sentence for this crime was reversed by this Court. See Franqui I, 699 So.2d at 1333. A different trial judge subsequently presided over Franqui's resentencing and issued the death sentence that was later affirmed on direct appeal. See Franqui II, 804 So.2d at 1189. Thus, the same judge did not issue the two death sentences now pending.

3. State's Subpoena of Eric Cohen
Franqui claims it was improper for the State to invoke the use of an investigatory subpoena to compel defense counsel to appear for questioning in the prosecutor's office prior to the postconviction evidentiary hearing. Section 27.04, Florida Statutes (2006), provides as follows:
The state attorney shall have summoned all witnesses required on behalf of the state; and he or she is allowed the process of his or her court to summon witnesses from throughout the state to appear before the state attorney in or out of term time at such convenient places in the state attorney's judicial circuit and at such convenient times as may be designated in the summons, to *35 testify before him or her as to any violation of the law upon which they may be interrogated, and he or she is empowered to administer oaths to all witnesses summoned to testify by the process of his or her court or who may voluntarily appear before the state attorney to testify as to any violation or violations of the law.
While we may agree with Franqui that this statute, giving prosecutors the powers necessary to investigate crimes, should not be used as a discovery tool to compel defense counsel to testify ex parte in postconviction proceedings, we find no error in the trial judge's treatment of the issue as asserted in this case. We conclude that the record conclusively demonstrates that no harm resulted from the State's pretrial questioning of defense counsel or the failure of the State to notify postconviction counsel of this questioning. In other words, while it may appear that the State abused its authority under the statute, Franqui has not demonstrated that the State was provided information that it was not otherwise entitled to in defending Franqui's assertions of ineffectiveness of counsel.

4. Improper Prosecutorial Conduct
Franqui next takes issue with the trial court's denial of relief on his claim of fundamental error in the prosecutor's improper remark in the State's closing: "If the aggravation is always stronger, always more powerful in your hearts and minds, the Judge is going to tell you it's your obligation that you should vote to recommend for death." As the trial court correctly noted, this Court did address several improper comments made at Franqui's trial on the direct appeal after resentencing and found no reversible error. Further, even though it was not specifically challenged on direct appeal, we addressed the comment at issue in this claim:
At oral argument, Franqui's appellate counsel also argued that the State misstated the law during closing argument in commenting, "[I]f the aggravation is always stronger, always more powerful in your hearts and in your minds, the Judge is going to tell you it's your obligation that you should vote to recommend for the death penalty." No objection was made to this comment at trial, nor was this issue raised in Franqui's brief. Nevertheless, we take this opportunity to caution prosecutors to avoid using language instructing the jury that it has a duty or obligation to recommend death. See Urbin v. State, 714 So.2d at 411, 421 (Fla.1998); Garron [v. State], 528 So.2d [353,] 359 [(Fla.1988)].
Franqui II, 804 So.2d at 1194 n. 8.
We also agree with the postconviction court that this claim is procedurally barred since it could have been raised as fundamental error on direct appeal. Further, Franqui has not established that the comment constitutes the fundamental error necessary to overcome the lack of preservation by trial counsel. See Robinson v. State, 520 So.2d 1, 7 (Fla.1988) ("Our cases also have long recognized that improper remarks to the jury may in some instances be so prejudicial that neither rebuke nor retraction will destroy their influence, and a new trial should be granted despite the absence of an objection below. . . ."). In fact, it is apparent from our discussion that we considered this comment on direct appeal and did not conclude that it constituted fundamental error. We also note that Franqui has not demonstrated that the jury was not properly instructed by the trial court on this same issue. For all of these reasons, we conclude relief on this claim was properly denied.

5. Florida's Death Penalty is Unconstitutional
Franqui next asserts that Florida's death penalty scheme is unconstitutional *36 under Ring v. Arizona, 536 U.S. 584, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002). However, both this court and the United States Supreme Court have held that Ring does not apply retroactively. See Johnson v. State, 904 So.2d 400 (Fla.2005); Schriro v. Summerlin, 542 U.S. 348, 124 S.Ct. 2519, 159 L.Ed.2d 442 (2004). Franqui's death sentence became final after the Court rejected his direct appeal following resentencing in 2001; therefore, Franqui cannot rely on Ring to find his death sentence unconstitutional. See Washington v. State, 907 So.2d 512, 514 (Fla.) (finding defendant not entitled to relief under Ring because Ring is not applied retroactively), cert. denied, 546 U.S. 1064, 126 S.Ct. 802, 163 L.Ed.2d 632 (2005).

PETITION FOR WRIT OF HABEAS CORPUS

1. Ineffective Assistance of Appellate Counsel
Consistent with the Strickland standard, to grant habeas relief based on ineffectiveness of counsel, this Court must determine
first, whether the alleged omissions are of such magnitude as to constitute a serious error or substantial deficiency falling measurably outside the range of professionally acceptable performance and, second, whether the deficiency in performance compromised the appellate process to such a degree as to undermine confidence in the correctness of the result.
Pope v. Wainwright, 496 So.2d 798, 800 (Fla.1986); see also Freeman v. State, 761 So.2d 1055, 1069 (Fla.2000); Thompson v. State, 759 So.2d 650, 660 (Fla.2000). In raising such a claim, "[t]he defendant has the burden of alleging a specific, serious omission or overt act upon which the claim of ineffective assistance of counsel can be based." Freeman, 761 So.2d at 1069; see Knight v. State, 394 So.2d 997, 1001 (Fla. 1981); see also Rutherford v. Moore, 774 So.2d 637, 643 (Fla.2000). "If a legal issue `would in all probability have been found to be without merit' had counsel raised the issue on direct appeal, the failure of appellate counsel to raise the meritless issue will not render appellate counsel's performance ineffective." Id. (quoting Williamson v. Dugger, 651 So.2d 84, 86 (Fla. 1994)).

A. Failure to Challenge Franqui's Confession
Franqui claims that appellate counsel was ineffective for failing to challenge the circumstances of Franqui's confession on direct appeal. This issue is somewhat related to Franqui's postconviction claim challenging trial counsel's effectiveness in seeking suppression of Franqui's confession. After a lengthy hearing on Franqui's motion to suppress, the trial judge concluded that Franqui's confession was not coerced and that his waiver of rights was both free and voluntary. Importantly, Franqui has not demonstrated in his habeas petition that, in all probability, appellate counsel would have been successful in overturning the trial court's findings and rulings on direct appeal. While Franqui testified at the suppression hearing that he was coerced and that his confession was essentially beaten out of him, this testimony was not found credible by the trial judge, who instead credited the officers' testimony that Franqui voluntarily waived his rights and that he was not mistreated in any way. Although the suppression hearing revealed that Franqui was questioned over a lengthy period, the record also demonstrates that he was given refreshment, allowed to take a break to speak with his wife, was repeatedly informed of his rights on multiple occasions, *37 and, according to the State's witnesses, appeared alert the entire time.
Based on the totality of the circumstances in the instant case, and the existence of competent, substantial evidence to support the trial court's rulings, we cannot conclude that appellate counsel was ineffective for failing to challenge the denial of the motion to suppress on appeal. See Chavez v. State, 832 So.2d 730, 748-49 (Fla.2002) (finding that continual police custody of more than fifty-four hours was not dispositive of whether or not to suppress a confession since the defendant in that case was provided with frequent breaks, refreshment, and time away from the police facility, and furthermore that the defendant consistently agreed to waive his rights under Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966)); Walker v. State, 707 So.2d 300, 310-11 (Fla.1997) (upholding voluntariness of confession where the defendant was questioned for six hours during the morning and early part of day, was provided with drinks and allowed to use the bathroom when he wished, was never threatened with capital punishment, and was never promised anything other than that the officer would inform the prosecutor that the defendant had cooperated).
Further, as the State correctly notes in response to Franqui's alternative argument, Franqui did not argue during trial that his confession should have been suppressed because of the state of his mental health; accordingly, any claim based on his mental health during interrogation was not preserved for review. Perez v. State, 919 So.2d 347, 359 (Fla.2005) (holding that, for an issue to be preserved for appeal, the specific legal argument or ground to be argued on appeal must have been presented to the lower court), cert. denied, ___ U.S. ___, 126 S.Ct. 2359, 165 L.Ed.2d 285 (2006). In turn, since the issue was not preserved, appellate counsel cannot be deemed ineffective for failing to raise it. Groover v. Singletary, 656 So.2d 424, 425 (Fla.1995).

B. Prosecutorial Misconduct
Although not specified in his brief, Franqui claims ineffective assistance of appellate counsel for failing to challenge alleged improper prosecutorial comments made at trial. Given that the particular comments are not argued with any specificity and there is no attempt to demonstrate that any alleged errors were preserved for appeal, we find any such claim to be insufficiently pled and we deny relief. See Patton v. State, 878 So.2d 368, 380 (Fla.2004) (holding that conclusory allegations are insufficient to properly state a claim). We also note that a similar issue was raised by counsel on appeal and we found similar comments to be harmless in view of the overall circumstances of the case, including the trial court's instructions to the jury. See Franqui II, 804 So.2d at 1192-94.

C. Record of Confessions
Franqui raised a claim in his original 3.851 motion to the court below, alleging that the circumstances surrounding his confession, including the officers' election not to make an audio or visual recording of any portion of the interrogation, make the defendant's statement unreliable, illegal and inadmissible. However, the trial court denied relief, finding the claim to be procedurally barred while also noting that that there is no constitutional or other legal requirement that police agencies record or preserve an oral confession. In his habeas petition, Franqui now argues that appellate counsel was ineffective for not raising the same claim on direct appeal. The record reflects that while Franqui did move to suppress his confession, he did not *38 argue that it should be suppressed because it was not recorded. As the State correctly notes, in order to preserve an issue regarding suppression, Franqui must have raised to the trial court the same argument he raises on appeal. See Perez, 919 So.2d at 349. We agree that since the issue was not preserved, appellate counsel cannot be deemed ineffective for failing to raise it. See Groover, 656 So.2d at 425.

D. Testimony of Assistant State Attorney DiGregory
Franqui argues that appellate counsel was ineffective when he failed to raise on direct appeal the trial court's decision to prevent defense counsel Cohen from calling Assistant State Attorney Kevin DiGregory as a witness. Without providing any legal basis for a claim of error or details regarding the failed attempt to call DiGregory as a witness in the guilt-phase trial, Franqui argues that DiGregory should have been asked a number of questions that Franqui now posits for the first time in this proceeding. Given the lack of specificity and legal basis regarding this claim, as well as the hypothetical nature of the questions posed, we find this claim to be insufficiently pled and deny relief. See Patton, 878 So.2d at 380.

E. Mitigation
Franqui claims that appellate counsel failed to sufficiently challenge the resentencing court's rejection of the fact that Franqui did not fire the fatal bullet as nonstatutory mitigation. This claim, however, is refuted by the record, which reflects that appellate counsel did raise this argument in Franqui's direct appeal after resentencing, and the argument was expressly rejected by this Court. See Franqui II, 804 So.2d at 1197 ("Under the particular facts in this case, we find that the trial court did not err in considering, but ultimately rejecting, the fact that Franqui did not fire the fatal bullet as a mitigating circumstance.").

CONCLUSION
For the reasons stated, we affirm the circuit court's denial of postconviction relief and deny Franqui's petition for a writ of habeas corpus.
It is so ordered.
LEWIS, C.J., and WELLS, ANSTEAD, PARIENTE, QUINCE, CANTERO, and BELL, JJ., concur.
NOTES
[1] The trial court found the following aggravators: prior conviction for a capital or violent felony (great weight); the murder was committed during the course of a robbery and for pecuniary gain (merged) (great weight); and the murder was committed to avoid arrest and hinder law enforcement and the victim was a law enforcement officer (merged) (great weight). Franqui II, 804 So.2d at 1191 n. 2.
[2] The trial court considered but rejected the age mitigators, and found no other statutory mitigators. Id. at 1191 n. 3.
[3] The trial court found the following four nonstatutory mitigating circumstances: Franqui's relationship with his children (little weight); his cooperation with authorities (little weight); that his codefendants only received life sentences (little weight); and his self-improvement and faith while in custody (some weight). Id. at 1191 n. 4.
[4] Franqui raised the following postconviction claims to the trial court: (1) the procedure for the assignment of trial judges in Dade County criminal cases is inherently unfair, particularly in Franqui's case; (2) the circumstances surrounding Franqui's waiver of his right to testify show that the waiver was involuntary and unknowing; (3) the circumstances surrounding his confession make Franqui's statement unreliable, illegal and inadmissible; (4) the trial court denied Franqui the right to obtain evidence from a material, relevant witness; (5) Franqui was denied due process when the second sentencing court allowed his statement to be admitted into evidence but failed to permit the defense to present evidence on the confession issues; and (6) trial counsel was ineffective for [a] making no effort to litigate the suppression of Franqui's statement despite ample and compelling evidence for suppression; [b] failing to pursue Franqui's right to obtain evidence from a material, relevant witness; [c] failing to present witnesses; [d] resentencing counsel failed to litigate Franqui's filed suppression motion apparently because both he and the judge mistakenly believed that the confession issue had already been litigated and lost in the Florida Supreme Court; [e] resentencing counsel failed to challenge the voluntariness of Franqui's confession to the jury; [f] resentencing counsel failed to challenge the constitutionality of Florida's death penalty scheme; [g] failing to file a motion to dismiss the charges against Franqui based on patent deficiencies in the indictment; [h] failing to present neutral reasons for exercising a peremptory challenge against panel member Diaz, resulting in that juror being seated; [i] failing to preserve patent trial court error in preventing a defense strike against prospective juror Andani; [j] failing to litigate Franqui's request for individual voir dire and motion to sequester; [k] failing to preserve patent trial court error in allowing the State to peremptorily challenge prospective juror Pascual; [l] failing to object to the prosecutor's misstatement of the law in closing; and [m] appellate counsel's failure to raise the issue of prosecutorial misconduct.
[5] Inasmuch as Franqui claims that original trial counsel did not take any action at the suppression hearing in the instant case, this claim is clearly refuted by the record; accordingly, this claim will be treated as if Franqui asserts that the assistance trial counsel did provide was ineffective.
[6] In addition, Cohen did assert a claim at the suppression hearing relating to Detective Naboot overhearing a conversation between Franqui and his wife in which he told her that he shot at the officer but his was not the fatal bullet. Cohen would not stipulate to any testimony in this regard and instead deposed Naboot and was granted a separate suppression hearing on the issues raised.
[7] Records from the Hialeah case indicate that defense counsel called Dr. Toomer during the penalty phase, when he testified as an expert in forensic psychology. This was in November of 1993, well before the suppression hearing in the instant case, which occurred in May of 1994. In addition to meeting with Franqui three times, Dr. Toomer testified that he reviewed various records extensively, met with members of Franqui's family, and gathered information about his background. Dr. Toomer's testimony basically reflects what was contained in his letter to Cohen, expounding upon it to illustrate that Franqui has suffered these problems since childhood. Dr. Toomer then discussed the "Revised Beta Exam," which indicated that Franqui's IQ was "less than 60." Dr. Toomer explained that this particular test relied on nonverbal intelligence, that it was a standard IQ test, and that he scored the test, a task he is trained to do. Franqui's score indicated that he is in the "retarded range." Dr. Toomer concluded his testimony by stating that the "extreme emotional disturbance" mitigator applied to Franqui, and also that his chronological age did not reflect his mental age.

On cross-examination, Dr. Toomer confirmed that he had testified for defendants between fifteen and twenty times in previous trials. The State spent a lot of time going through statements Dr. Toomer made in previous trials and diagnoses he had given, as well as the fact that he had no other version of the facts in the instant case other than what Franqui had told him and that he had not read any police reports about the incident. The State also pointed out inconsistencies between Franqui's own testimony and the conclusions reached and testified to by Dr. Toomer, including the fact that the hospital records from Franqui's accident as a teenager do not indicate that he lost consciousness. The State asked Dr. Toomer about the results of Franqui's Wechsler Test, which indicted he had a full-scale IQ score of 83.
[8] We have already discussed the fact that the trial court had both considered and rejected Dr. Toomer's opinion testimony as presented at sentencing in the Hialeah murder.
[9] See Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986); State v. Neil, 457 So.2d 481 (Fla.1984).
[10] When Cohen challenged this particular juror, the State objected, but Cohen failed to respond and juror Andani was seated.
[11] Inasmuch as Franqui claims that trial counsel was ineffective for failing to pursue joinder of the instant case with the Hialeah case, we conclude this claim is insufficiently pled. Franqui's entire argument in this appeal is one sentence contained in a footnote: "Whether a motion to consolidate should have been filed is an issue, which speaks to whether the defense counsel was ineffective in not so filing." See Appellant's Initial Brief at 58 n. 29.